IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARK A. FREEMAN and
TIMOTHY K. STRINGER,

      Plaintiffs,

      v.                       Case No. 02-2250-JWL

PLAYTEX PRODUCTS, INC.,

      Defendant.

**MEMORANDUM AND ORDER**

Plaintiffs Mark A. Freeman and Timothy K. Stringer own United States Patent No. 5,186,347 (the '347 patent), which is a patent for a spill-proof closure used in dispensing liquid beverages. They allege that sippy cups sold by the defendant Playtex Products, Inc. infringe certain claims of the '347 patent. The court has already issued an order construing the disputed claim elements of the '347 patent. *See generally Freeman v. Gerber Prods. Co.*, 357 F. Supp. 2d 1290 (D. Kan. 2005).[1] The matter is now before the court on Playtex's Motion for Summary Judgment of Non-Infringement (Doc. 36). For the reasons explained below, Playtex's motion is granted based on non-infringement of the "planar section of" aspects of claim limitations 7(f) and 14(f).

---

[1] This case was consolidated with the *Gerber* case for purposes of discovery and claim construction.

**STATEMENT OF MATERIAL FACTS**

In this lawsuit for infringement of the '347 patent, the only independent claims at issue are claims 7 and 14. Those claims describe a controllable valved closure for use in dispensing a beverage from a container. In simple terms, the closure generally consists of a beverage container lid with a spout, a valve structure that attaches to the inner surface of the spout, and, within that valve structure, a thin membrane with slit(s) that open and close to control the flow of fluid through the valve and out the spout. The claim limitations currently at issue are the aspects of 7(f) and 14(f) which claim "a slit through" or a "disjoined portion within" "a planar section of said thin membrane." Plaintiffs amended these claim limitations during patent prosecution by adding the words "a planar section of" to clearly define their invention over United States Patent No. 4,496,062 to Coy.

Playtex sells a line of spill-proof cups for infants as well as spill-proof replacement valves for use in its cups. Playtex's spill-proof cups use valves to control the flow of fluids from the inside of the cup to the outside of the cup. The valve opens when a user (child) begins sucking on the spout and closes when the user stops sucking on the spout. Since 1998, almost all of Playtex's spill-proof cups have utilized a valve referred to as the "SipEase" valve. Plaintiffs allege that Playtex's spill-proof cups with the SipEase valve infringe independent claims 7 and 14 of the '347 patent.[2]

---

[2] During 2003 and 2004, Playtex used another valve in two of its spill-proof cups that the parties refer to as the "Tower" valve. In the parties' memoranda they discuss the characteristics of the Tower valve. But, it does not appear to the court that the Tower valves are at issue in this lawsuit. Paragraph 6 of Playtex's statement of undisputed fact clarifies that

United States Patent No. 6,050,445 (the '445 patent) describes and claims the SipEase valve. The figures below depict the SipEase valve as disclosed in the '445 patent. In Figure 5, the valve membrane is identified as number 30 and the slit is identified as number 32. The curvature of the membrane is illustrated in Figure 4. Plaintiffs point out, however, that the figures depicted in the '445 patent are not engineering drawings and do not accurately reflect the dimensions and configuration of Playtex's Sip-Ease valve. Rather, the engineering drawings for the valve membrane are contained in Exhibit 8 to John Rousso's declaration and are set forth below.



---

plaintiffs allege that Playtex's spill-proof cups "with the SipEase valve infringe" the claims of the '347 patent. Similarly, plaintiffs' complaint alleges infringement with respect to Playtex "cups and lids having SipEase$^{TM}$ valves, and SipEase$^{TM}$ replacement valves." Complaint (Doc. 1), ¶¶ 4, 8, at 1-2. If the court's understanding is incorrect and the Tower valves are in fact at issue in this case, the court anticipates that the parties will file a motion to reconsider and clarify how it is that the Tower valves are at issue.



Additionally, Playtex submitted an actual sample of the SipEase valve as Exhibit 5 to Mr. Rousso's declaration.

Plaintiffs contend that the slit in the SipEase valve membrane passes through a portion of the membrane that has a "flat, two-dimensional quality." In support of this argument, plaintiffs have submitted a declaration from their expert, Dr. Robert Sorem, in which he offers the following opinion:

> It is . . . my opinion that the Playtex valve includes a slit . . . within the section of the thin membrane that has a flat, two-dimensional quality. This is in contrast to the Coy valve (the reason for the claim amendment), which clearly has a three-dimensional, V-shaped quality at the location of the opening in the valve. The geometry, or shape, of membranes is defined by the plane of the membrane as a two-dimensional coordinate system which is defined as curved (it may be flat, but it is not limited to being perfectly flat); the thickness is defined by the

third dimension. The thickness of the membrane is typically small compared to the other two dimensions. In describing the shape of the Playtex valve and the valve depicted in Figure 2 of the '347 patent, the planar section of the membrane adjacent to the slit would be defined by this two-dimensional coordinate system with the slit through the thickness of the two-dimensional surface. The Coy valve would not be described in this manner. The shape of the Coy valve at the location of the opening would be described by two converging planes each described as a two-dimensional surface. The slit would be nearly parallel to the two-dimensional surfaces, i.e., not through the thickness.

The senior Playtex engineer who was involved in developing the SipEase valve, Francis X. Manganiello, testified in his deposition that the face of the valve was designed to be concave primarily to prevent "salt and pepper" leakage. But United States Patent No. 4,728,006 (the '006 patent) teaches that the concave curvature is not the only variable that impacts the degree of leakage. According to the '006 patent, when all other variables are held constant, leakage is a function not only of a valve membrane's radius of curvature but also of the valve membrane's thickness and flexural modulus.

Playtex contends that it is entitled to summary judgment on the grounds that its spill-proof cups do not have a slit through or a disjoined portion within "a planar section of" the thin membrane as required by claim limitations 7(f) and 14(f).[3]

---

[3] Playtex also seeks summary judgment on the additional grounds that its valve assembly attaches the valve membrane to the inner surface of the spout by virtue of a friction fit rather than by a ridge-and-groove structure as required by claim limitations 7(e) and 14(e) and also that its lids are secured on the beverage container by virtue of a threaded ridge-and-groove structure rather than by a friction fit as required by claim limitations 7(b) and 14(b). These arguments are technically moot because the court finds that Playtex is entitled to summary judgment on the grounds of non-infringement of the "planar section of" limitation of 7(f) and 14(f). But, the court nonetheless notes that, for essentially the same reasons given in the court's memorandum and order in the *Gerber* case with respect to claim limitations 7(e) and 14(e), a genuine issue of material fact exists regarding whether the design of the Playtex sippy

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Wright ex rel. Trust Co. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler*, 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Spaulding*, 279 F.3d at 904 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671).

---

cups constitutes equivalent structure for performing the identical functions.

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324. The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256; *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001). Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Mitchell v. City of Moore*, 218 F.3d 1190, 1197-98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671). To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Adams,* 233 F.3d at 1246.

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut"; rather, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

## ANALYSIS

As explained below, the court concludes that Playtex is entitled to summary judgment of non-infringement. The Playtex valve does not literally infringe claim limitations 7(f) and 14(4) because the slit in its valve membrane is not located within a planar section of the membrane. Additionally, plaintiffs are not entitled to the benefit of the doctrine of equivalents because of plaintiffs' narrowing amendments made during prosecution history to distinguish the '347 valve membrane over Coy.

Determining whether a claim has been infringed requires a two-step analysis. *Boss Control, Inc. v. Bombardier Inc.*, 410 F.3d 1372, 1376 (Fed. Cir. 2005). First, the court must properly construe the claim to determine its scope and meaning. *Id.* In this case, the court has already construed claim limitations 7(f) and 14(f) to mean a slit through or a disjoined portion within "the section of the thin membrane that has a flat, two-dimensional quality." *Freeman v. Gerber Products Co.*, 357 F. Supp. 2d 1290, 1313 (D. Kan. 2005). With these claim limitations already construed as a matter of law, then, the court will proceed to the second step of the infringement analysis.

In step two, the court compares the properly construed claims to the accused device or process. *Boss Control*, 410 F.3d at 1376. "To prove infringement, the patentee must show that the accused device meets each claim limitation, either literally or under the doctrine of equivalents." *Playtex Prods., Inc. v. Procter & Gamble Co.*, 400 F.3d 901, 906 (Fed. Cir. 2005). Here, Playtex contends that its valve membrane does not infringe claim limitations 7(f)

and 14(f) because the slit in its valve is located through a curved section of the valve face.[4] Playtex seeks summary judgment of no literal infringement and no infringement under the doctrine of equivalents. "Infringement, whether literal or under the doctrine of equivalents, is a question of fact." *Boss Control*, 410 F.3d at 1376; *accord Nazomi Communications, Inc. v. Arm Holdings, PLC*, 403 F.3d 1364, 1367 (Fed. Cir. 2005).

### A.    Literal Infringement

The record reveals that Playtex's valve membrane is curved and contains a slit, slightly off center, that runs almost the entire diameter of the membrane from one valve wall to the other. This is reflected in the patent drawings, the engineering drawings, and a visual examination of the actual valve membrane. The critical aspect of the valve membrane is its shape where the slit is located. According to the court's claim construction order, this section of the membrane must be planar, or have a flat, two-dimensional quality. Clearly, the valve membrane is curved at this location. It does not have a flat, two-dimensional quality but rather a curved, three-dimensional quality.

Plaintiffs nonetheless argue that a rational trier of fact could conclude that the section of the membrane through which the slit is located has a flat, two-dimensional quality based on the opinion of their expert, Dr. Robert Sorem. In Dr. Sorem's declaration, he opines that "the Playtex valve includes a slit . . . within the section of the thin membrane that has a flat, two-

---

[4] Playtex's arguments do not distinguish between claim limitations 7(f) and 14(f) inasmuch as 7(f) claims "a slit through" whereas 14(f) claims "a disjoined portion within" the thin membrane. Rather, Playtex's arguments focus on whether the slit is located in a "planar section of" the thin membrane. The court therefore will confine its analysis to the same issue.

dimensional quality." He then explains this opinion by contrasting the Playtex curved membrane from the V-shaped membrane at issue in Coy and explaining that the shape of a membrane is defined "as a two-dimensional coordinate system which is defined as curved (it may be flat, but it is not limited to being perfectly flat); the thickness is defined by the third dimension. The thickness of the membrane is typically small compared to the other two dimensions." According to Dr. Sorem, in the Playtex valve and in the valve depicted in the '347 patent, the membrane "would be defined by this two-dimensional coordinate system with the slit through the thickness of the two-dimensional surface" whereas the Coy valve "would be described by two converging planes each described as a two-dimensional surface."

"[I]t is well settled that an expert's unsupported conclusion on the ultimate issue of infringement is insufficient to raise a genuine issue of material fact." *Arthur A. Collins, Inc. v. Northern Telecom Ltd.*, 216 F.3d 1042, 1046 (Fed. Cir. 2000). A party cannot avoid this rule simply by framing "the expert's conclusion as an assertion that a particular critical claim limitation is found in the accused device." *Id.* In this case, the court finds Dr. Sorem's opinion to be nothing more than an unsupported conclusion on the ultimate issue of infringement. His assertion is based on two-dimensional and three-dimensional coordinate systems, but the court did not construe the term "planar" in terms of "coordinate systems." Rather, the court construed it to mean a membrane having a "flat, two-dimensional quality." Dr. Sorem's unelaborated references to coordinate systems add nothing of substance to his bare assertion that the Playtex membrane has a flat, two-dimensional quality. Dr. Sorem makes his conclusory assertions by "using words in ways that contradict their plain meaning," *Dynacore*

10

*Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1278 (Fed. Cir. 2004), such as suggesting that the term curved "may be flat, but is not limited to being perfectly flat." In short, his unsupported, insufficiently explained conclusion has no credibility in light of the fact that the section of the SipEase valve membrane where the slit is located is visibly curved to the naked eye. Accordingly, his opinion is insufficient to create a genuine issue of material fact on infringement. *See, e.g.*, *Dynacore*, 363 F.3d at 1278 (affirming district court's grant of summary judgment of non-infringement where expert's opinions were unsupported conclusory statements); *Arthur A. Collins*, 216 F.3d at 1046 (same); *Phillips Petroleum Co. v. Huntsman Polymers Corp.*, 157 F.3d 866, 876 (Fed. Cir. 1998) (same).

The court, then, finds that based on the record currently before the court no rational trier of fact could conclude that the section of the membrane through which the slit is located has a planar, or flat, two-dimensional quality. Accordingly, Playtex's motion for summary judgment on the basis of literal non-infringement of this claim limitation is granted. The more pivotal issue in this case is whether plaintiffs can recapture any arguably insubstantial differences between the shape of the Playtex valve membrane and the valve membrane disclosed in the '347 patent under the doctrine of equivalents.

**B.     Infringement Under the Doctrine of Equivalents**

"Infringement under the doctrine of equivalents occurs when a claimed limitation and the accused product perform substantially the same function in substantially the same way to obtain substantially the same result." *Business Objects, S.A. v. Microstrategy, Inc.*, 393 F.3d 1366, 1374 (Fed. Cir. 2005). "The doctrine of equivalents allows the patentee to claim those

11

insubstantial alterations that were not captured in drafting the original patent claim but which could be created through trivial changes." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733 (2002) ("*Festo*"). Under the doctrine, an element in the accused device is equivalent to a claim limitation if their differences are insubstantial. *Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1139 (Fed. Cir. 2004), *cert. denied*, 125 S. Ct. 2928 (2005). Prosecution history estoppel, however, bars the patentee from asserting equivalents if the scope of the claim has been narrowed by amendment during prosecution. *Festo*, 535 U.S. at 733-34, 736 ("Estoppel arises when an amendment is made to secure the patent and the amendment narrows the patent's scope."). The rationale is that

> [w]hen . . . the patentee originally claimed the subject matter alleged to infringe but then narrowed the claim in response to a rejection, he may not argue that the surrendered territory comprised unforeseen subject matter that should be deemed equivalent to the literal claims of the issued patent. . . .
> 
> A rejection indicates that the patent examiner does not believe the original claim should be patented. While the patentee has the right to appeal, his decision to forgo an appeal and submit an amended claim is taken as a concession that the invention as patented does not reach as far as the original claim.

*Id.* at 733-34. Consequently, a narrowing amendment gives rise to a rebuttable presumption that the patentee surrendered any subject matter between the amended claim as originally filed and claims allowed by the Patent and Trademark Office (PTO). *Id.* at 741.

In this case, as discussed in detail in the court's prior order, when plaintiffs originally applied for the patent in 1991, claim element 7(f) claimed "a slit through said thin membrane" and 14(f) claimed "a disjoined portion within said thin membrane." *Freeman v. Gerber Prods. Co.*, 357 F. Supp. 2d 1290, 1308-09 (D. Kan. 2005). On June 24, 1992, the PTO examiner

conducted a telephone interview with Mr. Freeman.  *Id.* at 1309.  During that interview, the examiner requested and received authorization from Mr. Freeman to add the additional language "a planar section of" to these claim elements.  *Id*.  The examiner interview summary record describes the general nature of what was agreed to during the interview as: "Agreed upon Examiner's Amendment to clearly define over Coy."  *Id.*  Thus, based on the prosecution history, a presumption arises that plaintiffs have surrendered all subject matter between any membrane with a slit through or disjoined portion within it and any membrane in which the slit or disjoined portion is located through or within a planar section of the membrane.  In other words, plaintiffs have presumptively surrendered all membranes in which the slit or disjoined portion is located through or within a non-planar section of the membrane.

Plaintiffs, then, can rebut this presumption by demonstrating that (1) the alleged equivalent was unforeseeable at the time of the narrowing amendment, (2) the rationale underlying the narrowing amendment bore no more than a tangential relation to the equivalent at issue, or (3) there was some other reason why the patentee could not reasonably have been expected to describe the alleged equivalent.  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1368 (Fed. Cir. 2003) (en banc) ("*Festo II*") (citing *Festo*, 535 U.S. at 740-41).  Here, plaintiffs argue the second of these grounds – that is, that the narrowing amendment bears no more than a tangential relation to the shape of Playtex's valve membrane. The primary consideration in determining when an amendment bears only a tangential relation to the equivalent in question is "'whether the reason for the narrowing amendment was peripheral, or not directly relevant, to the alleged equivalent.'"  *Insituform Techs., Inc. v. CAT*

*Constr., Inc.*, 385 F.3d 1360, 1370 (Fed. Cir. 2004) (quoting *Festo II*, 344 F.3d at 1365); *accord Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1383 (Fed. Cir. 2005). This inquiry "focuses on the patentee's objectively apparent reason for the narrowing amendment," a reason which "should be discernible from the prosecution history record." *Festo II*, 344 F.3d at 1369. A narrowing amendment is not tangential where, for example, it is made to avoid prior art that contains the equivalent in question; in that case, the amendment is central to allowing the claim. *Id.* Whether the patentee has rebutted the presumption of surrender is a question of law for the court. *Id.* at 1367-68.

As the court previously explained in its *Markman* ruling, the reason for the narrowing amendment was to distinguish the '347 patent over Coy by "eliminat[ing] the possibility that the slit could be located at the apex of a V-shaped portion of the thin membrane where two sidewalls converge. Absent this limitation, nothing . . . would prevent the thin membrane from being V-shaped with a slit at its apex that functions as the valve opening." *Freeman v. Gerber Prods. Co.*, 357 F. Supp. 2d 1290, 1309 (D. Kan. 2005). In this amendment, the shape of the membrane at the section through which the slit or disjoined portion passes was directly at issue during prosecution and it is directly relevant to the alleged equivalent. Playtex's valve membrane is curved, or non-planar. Narrowing the scope of the claim so that it does not encompass a V-shaped membrane with a slit at its apex is not peripheral or tangential to a curved membrane with a slit through it. Rather, the nature of the narrowing amendment reveals that it is directly relevant to such curved membranes because plaintiffs surrendered their claim to all such non-planar membranes in order to obtain their patent. *See, e.g., Chimie*, 402 F.3d

14

at 1383 (narrowing amendment to address issues raised during prosecution was not tangential to an equivalent having that characteristic).

Plaintiffs' rationale to the contrary is that the amendment was designed to eliminate the possibility that the slit could be located at the apex of a V-shaped portion of a membrane where two sidewalls converge, and this type of valve bears no relationship to the portion of Playtex's valve membrane that has a flat, two-dimensional quality. This logic is flawed, first and foremost, because if the relevant section of Playtex's membrane had a flat, two-dimensional quality, then the membrane would literally infringe the '347 patent and resort to the doctrine of equivalents would be unnecessary. But absent literal infringement, plaintiffs are trying to recapture territory that they surrendered during prosecution. Simply because the prior art (the V-shaped membrane in Coy) does not contain the precise alleged equivalent in question (a curved membrane) does not equate to a finding that the curved membrane at issue here is tangential to the purpose of the amendment. *See Chimie*, 402 F.3d at 1383 ("It does not follow . . . that equivalents not within the prior art must be tangential to the amendment.").

Plaintiffs' reliance on *Insituform Technologies, Inc. v. CAT Contracting, Inc.*, 385 F.3d 1360 (Fed. Cir. 2004), is misplaced. *Insituform* involved a patented process for repairing underground pipes without digging them up by impregnating a flexible tube liner with resin via a vacuum cup. The prosecution history involved an amendment which narrowed the patent claim to a single vacuum cup process, *id.* at 1368, thus presumptively eliminating multiple cup processes under the doctrine of equivalents. The Federal Circuit held that Insituform rebutted the *Festo* presumption by demonstrating that the narrowing amendment bore no more than a

15

tangential relation to the accused, multiple-cup process. *Id.* The narrowing amendment had been made to distinguish the process over prior art, Everson, and Insituform demonstrated that "the difference between its process and Everson was that its process did not have the disadvantage of the Everson process of a large compressor at the end of the liner." *Id.* at 1370. There was no indication in the prosecution history of any relationship between the narrowing amendment and the multiple cup accused process. *Id.* In *Insituform*, then, the plaintiff demonstrated that the prosecution history revealed that the narrowing amendment was made to distinguish prior art that necessitated a large compressor at the end of the liner. Thus, whether the process was a single-cup process or a multiple-cup process was tangential to the amendment's purpose to avoid a large compressor at the end of the liner. In contrast, in this case the narrowing amendment was made to distinguish the '347 patent over Coy by defining the shape of the membrane at the location of the slit through the membrane and Playtex's alleged equivalent likewise involves the issue of the shape of the membrane at the location of the slit. Thus, in this case, unlike in *Insituform*, the rationale underlying the narrowing amendment (to define the shape of the membrane at the location of the slit) is directly relevant to the alleged equivalent.[5]

---

[5] The court notes that Playtex filed a Motion for Leave to File a Supplemental Memorandum Presenting New Authority in Support of Its Motion for Summary Judgment of Non-Infringement (Doc. 51) in which Playtex asks the court to consider new authority from the Federal Circuit, *Biagro Western Sales, Inc. v. Grow More, Inc.*, — F.3d —, No. 04-1414, 2005 WL 2207685, at *1-*9 (Fed. Cir. Sept. 13, 2005). This motion is denied as moot given the court's ruling on this issue, which is consistent with *Biagro*.

In sum, plaintiffs have failed to rebut the presumption that they are estopped from attempting to recapture the surrendered territory of non-planar membranes by virtue of having made a narrowing amendment to distinguish the '347 patent over Coy. Plaintiffs are not entitled to recapture any non-planar membranes, no matter how insubstantially non-planar, under the doctrine of equivalents. Accordingly, Playtex's motion for summary judgment is granted with respect to the issue of infringement under the doctrine of equivalents. Because the court finds that Playtex's sippy cups do not infringe the "planar section of" limitation of claims 7 and 14 of the '347 patent, either literally or under the doctrine of equivalents, Playtex is entitled to judgment of non-infringement as a matter of law.

**IT IS THEREFORE ORDERED BY THE COURT** that Playtex's Motion for Summary Judgment of Non-Infringement (Doc. 36) is granted. The clerk is directed to enter judgment in favor of Playtex.

**IT IS SO ORDERED** this 19th day of September, 2005.

                                                s/ John W. Lungstrum
                                                John W. Lungstrum
                                                United States District Judge